UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VITALY FARGESEN,
    Petitioner,

v.                                      Case No. 3:25cv1018/MW/MAL

WARDEN FCI PENSACOLA,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court for preliminary review of the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Vitaly Fargesen. ECF No. 1. Upon review of the petition, I recommend this case be summarily dismissed pursuant to Rule 4 of the Rules Governing 2254 Cases because Petitioner Fargesen does not state sufficient facts to support his claims and, more importantly, the Court cannot order the Bureau of Prisons to place him in prerelease custody.[1]

### I.     Petitioner fails to allege sufficient facts to support his ground for relief.

In his petition, Fargesen states "Violation of Due Process" as his sole ground for relief. ECF No. 1 at 6. He provides no supporting facts in his petition but instead

---

[1] Rule 1(b) of the Rules Governing § 2254 Cases provides that the "district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)." The Local Rules of this Court also provide that the Rules Governing § 2254 Cases apply to all habeas cases filed in this District, regardless of whether they were filed under § 2254. N.D. Fla. Loc. R. 5.7(C).

refers to an attached memorandum. *Id.* The attached memorandum is unsworn and therefore not verified as required by statute and rule. *See* 28 U.S.C. § 2242; Rule 2(c)(5), Rules Governing Section 2254 Cases in the United States District Court. Accordingly, this court is free to reject the allegations in the memorandum. *See Kemmerer v. Benson*, 165 F.2d 702, 703 (6th Cir. 1948) (factual allegations set out in unverified brief but not in verified petition are not accepted).

Even if the court were to accept the allegations in the unverified memorandum, they are still lacking because they are conclusory. Fargesen states generally that the Bureau of Prisons (BOP) improperly denied him earned time credits under the First Step Act (FSA) and Second Chance Act (SCA), and that the "misclassification and denial of credits violate both the statutes at issue and [his] constitutional rights." ECF No. 1-1 at 1-2. He claims that the BOP has set his projected release date for November 22, 2026, and that he should have enough earned time credits to qualify for "immediate transfer" to prerelease custody under the FSA and SCA. *Id.* at 2.

While he states that the BOP "has improperly assessed [his] time credits" he fails to allege any facts to explain how or why. ECF No. 1-1 at 4. He mentions that the BOP is applying an "inconsistent, arbitrary, and erroneous scoring methodology" but again fails to provide any facts to support this generality. *Id.* at 5. He also

complains that the BOP "fail[ed] to credit the 365 days under the Second Chance Act" but states no factual or legal basis to support his assumption that he is entitled to the 365 days. *Id.*

Habeas corpus petitions under § 2241 "shall allege the facts." 28 U.S.C. § 2242. Fargesen's petition and memorandum do not allege sufficient facts to support his claims. He has not shown any miscalculation or misapplication of the FSA or SCA. Nor has he shown any misclassification or denial under the statutes, which is the basis for his due process and equal protection claims. *Id.* at 2, 5. Accordingly, his petition is subject to dismissal.[2]

## II. The court does not have authority to order Petitioner's transfer to prerelease custody under the SCA or FSA.

To explain why the court does not have the authority as a matter of law to order Petitioner's transfer to prerelease custody under the SCA or the FSA requires a lengthy discussion of several statutes. At the outset, it is helpful to note two things. First, prerelease custody does not mean release from imprisonment. Prerelease custody is placement of a prisoner outside of a normal BOP prison facility to "afford that prisoner a reasonable opportunity to adjust to and prepare for reentry of that

---

[2] While the Court would typically afford Petitioner the opportunity to amend his petition, as will be discussed in the next section, the Court does not have authority to order his transfer to prerelease custody. Therefore, amendment would be futile. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319-20 (11th Cir. 1999).

prisoner into the community." 18 U.S.C. § 3624(c). Second, prerelease custody under the FSA is governed by the provisions in § 3624(g), and more generally by § 3624(c), which applies to both the SCA and FSA.

This discussion starts with the BOP's authority to determine the place of imprisonment. Determining the place of imprisonment "is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Understandably, Congress delegated to the BOP the authority to designate the place of a prisoner's custody and enumerated five factors to consider. 18 U.S.C. § 3621(b).[3]

Prerelease custody, whether in a residential reentry center (RRC) or on home confinement qualifies as a "place of imprisonment" under § 3621(b). *Crowe, et al. v. Federal Bureau of Prisons, et al.,* No. 24-cv-3582 (APM), 2025 WL 1635392, at *21 (D. D.C. June 9, 2025). The option of prerelease custody became available under the SCA, through which Congress authorized the BOP to place a prisoner in a community correctional facility (also known as an RRC or Residential Reentry Center) or home confinement to prepare for reentry into society prior to the

---

[3] The statutorily identified factors to consider are:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence… and
    (5) any pertinent policy statement issued by the Sentencing Commission
18 U.S.C. § 3621(b).

expiration of a prison term. Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, § 251, codified at 18 U.S.C. § 3624(c). Under the SCA, a prisoner is eligible to spend up to 12 months in prerelease custody at an RRC prior to the end of his or her sentence. 18 U.S.C. § 3624(c)(1). A prisoner is also eligible for a period of home confinement not to exceed "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).

Importantly, the SCA made explicitly clear that prerelease custody determinations, like other custody determinations, are placement decisions committed to the discretion of the BOP by specifically adding the following provision: "Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). Furthermore, the BOP was directed to provide prerelease custody "to the extent practicable." 18 U.S.C. § 3621(c)(1) and (2). These provisions make clear that the BOP retains discretion to determine where and when to place an inmate in an RRC or home confinement under the SCA, and that a prisoner has no enforceable interest in transfer to prerelease custody on his earliest date of eligibility. *See, e.g., Bromfield v. Dobbs*, No. 18-CV-22618-SCOLA, 2019 WL 404048, at *5 (S.D. Fla. Jan. 16, 2019) (noting that a 12-month placement under the SCA is not guaranteed, and it is within the discretion of the BOP whether to place a prisoner in an RRC, and

if so for how long) (citing cases), *report and recommendation adopted*, No. 18-22618-CIV, 2019 WL 399899 (S.D. Fla. Jan. 31, 2019).

In accordance with the discretion granted to the BOP, a court generally does not have the authority to direct the BOP to place a prisoner in prerelease custody. *See Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *3 (11th Cir. Feb. 6, 2023) (court lacked the authority to order the BOP to place prisoner in home confinement); *Touizier v. U.S. Att'y Gen.*, No. 21-10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021) (same). Furthermore, there is generally no protected liberty interest in prerelease custody. *See Sills*, at *3 (acknowledging Sills had no protected liberty interest in home confinement and thus was "not entitled to due process protections in relation to that decision.").

The FSA built upon the structure created by the SCA in 18 U.S.C. § 3624(c) by adding a risk and needs assessment system whereby prisoners could earn incentives, including time credits to be applied toward placement in prerelease custody and toward early placement on supervised release, for successful participation in evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4); 18 U.S.C. § 3624(g). To this end, Congress expanded the time frame for release and prerelease custody by specifically

exempting FSA time credits from the "time limits" in 18 U.S.C. § 3624, subsections (b) and (c).[4]  18 U.S.C. § 3624(g)(10).

Notably, however, Congress did not exempt FSA prerelease custody from other provisions in § 3624(c), such as the explicit preservation of "the authority of the Director of the Bureau of Prisons" to make placement decisions regarding prerelease custody "under section 3621," or the qualification that prerelease custody is to be provided "to the extent practicable." 18 U.S.C. § 3624(c)(4) and (c)(1). Instead, the FSA reiterates the BOP's discretionary authority by expressly adding the following provision to the end of 18 U.S.C. § 3621(b): "Notwithstanding any other provision of law, the designation of a place of imprisonment under this subsection is not reviewable by any court." First Step Act of 2018, PL 115-391, December 21, 2018, 132 Stat 5194. As recently found by Judge Hinkle, "[n]othing in § 3624(g) limits the Bureau's § 3621 authority." *Hutson v. Pistro*, No. 4:24cv464-RH-MAL, 2025 WL 2048360, at *1 (N.D. Fla. Jul. 21, 2025).

---

[4] As noted above, subsection (c) limits placement in home confinement to 6 months and limits placement in an RRC to 12 months. 18 U.S.C. § 3624(c)(1) and (2). The FSA expanded on this by directing time credits to "be applied toward time in prerelease custody" without regard to the limit. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)(10).

Subsection (b) is not at issue in Fargesen's petition because his petition is limited to placement in prerelease custody, not release from custody. Subsection (b) limits early release from prison to no more than "54 days for each year of the prisoner's sentence imposed by the court." 18 U.S.C. § 3624(b). The FSA expanded on this by authorizing an additional 12 months of time credits to be applied toward early release from prison and placement on supervised release. 18 U.S.C. § 3624(g)(3).

These provisions, which are applicable to prerelease custody under both the SCA and the FSA, preserve the BOP's discretion to make custody determinations involving transfer to prerelease custody and are contrary to any right to immediate transfer. *See id.* at 3 (denying petition seeking immediate placement in prerelease custody); *Crowe*, 2025 WL 1635392, at *21-23 (no right to immediate transfer).

Nonetheless, Fargesen argues that 18 U.S.C. § 3632(d)(4)(C) requires his time credits to be applied. ECF No. 1-1 at 4-5. This section provides:

> *Time credits earned* under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall be applied toward time in prerelease custody or supervised release.* The Director of the Bureau of Prisons *shall transfer* eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (italics supplied).

While it is true this subsection uses mandatory language directing that the BOP "shall" apply FSA time credits "toward time in prerelease custody or supervised release" it does not require that *all* time credits earned be applied. Nor does it require the BOP to transfer prisoners into prerelease custody or supervised release *immediately* upon becoming eligible.

Furthermore, this provision does not appear in § 3624, but in a separate section of the FSA, § 3632, giving directions to the BOP to develop a risk and needs assessment system. Rather than conferring an individual right to immediate transfer,

it appears to provide direction to the BOP generally about where FSA time credits can be applied, i.e. "toward time in prerelease custody or supervised release," and it allows the BOP authority to apply credit toward such transfers. These directions are important because the FSA does not state anywhere else where to apply the time credits.[5]

The fact that Congress gave directions to the BOP in mandatory language about where to apply time credits does not confer an immediate right for prisoners to transfer into prerelease custody at the earliest date of eligibility. The subsection does not expressly say so. Nor would that construction make sense. Prerelease custody is tied to a place of imprisonment by § 3624(c)(4) and § 3621(b). Immediate transfer to prerelease custody, regardless of the appropriateness of the specific placement, is incompatible with the general purposes of prerelease custody, which is to "afford [a] prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). Thus

---

[5] Arguments have been made that the FSA authorized time credits to be applied to reduce a term of supervised release (as opposed to early placement on supervised release). In an unpublished opinion, the Eleventh Circuit Court of Appeals noted that the second sentence in 18 U.S.C. § 3632(d)(4)(C) ("The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."), "clearly indicates that Congress meant that the time credits are to be used to reduce incarceration time [in prison facilities] so as to accelerate the beginning of prerelease custody or supervised release" and not to shorten a term of supervised release. Guerriero v. Miami RRM, No. 24-10337, 2024 WL 2017730, at *2 (11th Cir. May 7, 2024).

"[*w*]*hether* to transfer a prisoner necessarily depends on where the prisoner might appropriately be placed." *Crowe*, 2025 WL 1635392, at *21 (italics in original).

Based on the plain reading of the relevant statutes, Fargesen's request for an order directing his immediate transfer to prerelease custody fails as a matter of law. *Hutson,* 2025 WL 2048360, at *1 (N.D. Fla. 2025); (citing *Crowe*, 2025 WL 1635392, at *21–23).

Accordingly, it is respectfully **RECOMMENDED**:

The Petition for Writ of Habeas Corpus under § 2241 (ECF No. 1) be summarily DISMISSED under Rule 4 of the Rules Governing Section 2254 Cases.

Done on July 30, 2025.

s/ *Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge

### NOTICE TO THE PARTIES

The case was referred to a United States Magistrate Judge for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.